Joseph S. Mattina, J.
A motion is brought before this court for a permanent injunction to relieve the plaintiffs from compliance with Executive Order No. 10 (9 NYCRR 3.10) based on an underlying complaint for judgment declaring Executive Order No. 10 unconstitutional.
Defendants answer the complaint for declaratory judgment denying the allegations in said complaint and raise several affirmative defenses coupled with a cross motion for Summary judgment.
With respect to the affirmative defenses in defendants’ answer, the court finds respectively that (1) the doctrine of exhaustion of administrative remedies does not apply since the Public Employment Relations Board (PERB) has no authority to decide the constitutionality of Executive Order No. 10 or issue a declaratory judgment as to the constitutionality thereof; (2) CPLR 3001 grants the Supreme Court for the State of New York the authority to render a declaratory judgment and (3) the pleadings show sufficient facts to state a cause for action.
The basic issue before this court is the constitutionality of Executive Order No. 10 (9 NYCRR 3.10) in light of section 1 of Executive Order No. 10 which provides, as applied to this case:
"All officers or employees in * * * non-competitive * * * positions within the Executive Department or any other State department or agency the head of which is appointed or nominated by the Governor, who earn $30,000 per year * * * shall, upon the filing of an oath of office and annually on May *121 fifteenth thereafter, file with the Board of Public Disclosure, hereinafter established:
"1. A current sworn statement of assets and liabilities;
"2. A sworn statement of income sources for the period of holding office, specifying amounts in excess of $1,000.* * *
"The Board [of Public Disclosure] shall file these statements [Financial Disclosure Statements] for public viewing with the Department of State in Albany, and shall establish a procedure, to be implemented by the Secretary of State, by which the statements so filed may be viewed by the public.
"Any person required to file such statements may request the Board to delete an item, which may be deleted by the Board only upon a finding that any such item is of a highly personal nature, does not in any way relate to the duties of the position held by such person, and does not create an actual or potential conflict of interest.”
The court is in agreement that there is a constitutional basis for disclosure laws. However, an equally important right of privacy has developed from a balancing of the principles underlying the First, Third, Fourth, Fifth and Ninth Amendments to the United States Constitution, especially the Fourth Amendment.
This penumbral right of privacy of individuals from intrusion by the government was brought to the forefront in Griswold v Connecticut (381 US 479) where the Supreme Court held unconstitutional a Connecticut statute which attempted to regulate the use of contraceptives. In that case the court drawing from a number of bill of rights guarantees created a zone of privacy. Quoting Justice Douglas (p 484): "Various guarantees create zones of privacy. The right of association contained in the penumbra of the First Amendment is one, as we have seen. The Third Amendment in its prohibition against the quartering of soldiers 'in any house’ in time of peace without the consent of the owner is another facet of that privacy. The Fourth Amendment explicitly affirms the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.’ The Fifth Amendment in its Self-Incrimination Clause enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment. The Ninth Amendment provides: 'The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.’ ”
*122 Since Griswold this concept has been expanded in various uses; for example in Roe v Wade (410 US 113) the court found that the government had no legitimate interest in the woman’s personal decision to terminate her pregnancy.
More recently in California Bankers Assn. v Schultz (416 US 21) the court considered the constitutionality of a section of the Bank Secrecy Act of 1970 requiring financial institutions to report large currency transactions which "in the judgment of the institution, exceed those commensurate with the customary conduct of the business, industry, or profession of the person or organization concerned”. Although the court did not find it necessary to pass on the question of privacy surrounding an individual’s financial transactions, Justice Powell in his concurring opinion alluded to such a right (pp 78-79): "Financial transactions can reveal much about a person’s activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy.”
In order to decide the constitutional question, it is this court’s opinion that a determination must be made as to whether Executive Order No. 10 constitutes such an invasion of the right of privacy. The right of privacy involves one’s own peace of mind and one’s personal affairs are an important facet of such peace of mind. Essential to such a determination is the reasonableness of the standards set for disclosure for noncompetitive class based solely on earnings in excess of $30,000. Implicit in such an inquiry is the nature of plaintiffs’ work. The plaintiffs are employed at Roswell Park Memorial Institute in a noncompetitive class dealing with cancer research and surgery, cancer medical treatment, biophysics, biology and research science. They are not in an administrative, confidential, managerial policy making class where a potential conflict of interest might be involved. They are valuable research scientists. However, Executive Order No. 10 makes no distinction based upon the duties and functions of the individuals involved herein. There is no recognition of the relationship between the disclosure requirement and the duties and functions of those individuals.
This court recognizes that the State has the right to regulate the affairs of officials and employees to a greater extent than to the citizenry at large. Any reasonable person can recognize the government’s interest at any level of government in protecting itself against wrongdoing of public officials *123 and employees in the performance of their duties. A dual-edged purpose is satisfied by reasonable rules of disclosure - one, it instills public trust in government and two, it prevents conflict of interest in governmental officials and employees. However, the government’s infringement of individual’s rights must be no greater than necessary to serve the government’s legitimate interests. That interest may not be achieved by means which sweep unnecessarily broad as to invade an individual’s right of privacy. There must be a balance between the legitimate governmental interests and the individual’s rights to be free of unreasonable and unnecessary governmental intrusion.
Assuming a compelling interest of government, the restrictions must nonetheless be drawn with specificity and bear a reasonable relationship to the achievement of the governmental purpose.
In this case, such interest must be restricted to activities reasonably related to the public employees’ duties and limited right to know of employees’ personal affairs.
There is no binding precedent in the New York courts. However, several out-of-State cases highlight the right of public employees to the expectation of privacy regarding financial affairs and demonstrate that reasonable limitations be placed on governmental disclosure requirements. Among them, (1) City of Carmel-By-The-Sea v Young (2 Cal 3d 259) which held a disclosure statute unconstitutional where it required disclosure of private financial affairs which bore no relevance to public duties of persons which were involved.
Balancing the legitimate governmental interests in avoiding compliance by public officials and employees against the right of privacy of those persons, the court stated (pp 263, 268): "’[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved’. (Shelton v. Tucker (1960) 364 U.S. 479, 488 [5 L Ed 2d 231, 237, 81 S Ct 247], 'Precision of regulation is required so that the exercise of our most precious freedoms will not be unduly curtailed except to the extent necessitated by the legitimate governmental objective. [Citations]’ (Vogel v County of Los Angeles (1967) 68 Cal. 2d 18, 22 [64 Cal Rptr. 409, 411, 434 P.2d 961].) * * * the protection of one’s personal financial affairs and those of his (or her) spouse and children against compulsory public disclo *124 sure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within that penumbra of constitutional rights into which the government may not intrude absent a showing of compelling need and that the intrusion is not overly broad.”
(2) A second California case, County of Nevada v MacMillen (11 Cal 3d 662, 671), where the court upheld a conflict of interest statute stating in comparing it with the previously held unconstitutional conflict of interest statute recited in City of Carmel-By-The-Sea v Young (supra): "Our major objection to the 1969 act was that
'No effort is made to relate the disclosure to financial dealings or assets which might be expected to give rise to a conflict of interest; that is, to those having some rational connection with or bearing upon, or which might be affected by, the functions or jurisdiction of any particular * * * public officer or employee.”’
(3) Montgomery County v Walsh (274 Md 502) which made an exception regarding disclosure requirements for employees whose duties were not likely to result in conflicts of interest.
New York State has enacted various statutes regulating the affairs of public officials and employees which require disclosure of financial interests involving possible conflicts with official duties.
These statutes, however, are narrowly and explicitly drawn, regulating specific public officers and specific areas of conflict. For example, (1) section 806 of the General Municipal Law, Code of ethics provides: "Such code shall provide standards for officers and employees with respect to disclosure of interest in legislation before the local governing body, holding of investments in conflict with official duties, future employment and such other standards relating to the conduct of officers and employees as may be deemed advisable.”
(2) Section 73 (subd 6, par [a]) of the Public Officers Law provides:
"Every member of the legislature or legislative employee shall * * * file * * * a written statement of "(1) each financial interest, * * * in any activity which is subject to the jurisdiction of a regulatory agency * * * (2) every office and directorship held by him in any corporation firm or enterprise which is subject to the jurisdiction of a regulatory agency, including the name of such corporation, firm or enterprise. (3) any other interest or relationship which he determines in his discretion *125 might reasonably be expected to be particularly affected by legislative action or in the public interest should be disclosed.”
(3) Subdivision b of section 60.10 of the Local Finance Law which requires disclosure of an interest of an officer or employee in a financial institution upon private sale of municipal bonds to financial institutions in which the officer or employee of the issuing agency was involved.
(4) Section 4305 of the Education Law prohibiting members of the Board of Visitors from financial interests in contracts pertaining to the New York State School for the Blind.
Clearly in each instance the statute is tailored to deal with possible conflicts of interest resulting from duties or functions of officials or employees to whom the legislation relates.
This court finds that a reasonable distinction has not been drawn in Executive Order No. 10 (9 NYCRR 3.10) between essentially research positions and positions which involve administrative, confidential and/or managerial policy making functions and duties. Obviously the mandatory filing of statements of financial worth is an appropriate safeguard against conflicts of interests by those officials and employees whose duties involve administrative, confidential, and/or managerial policy making decisions. However the sweeping language in Executive Order No. 10 applying to everyone earning $30,000 or more regardless of the nature of their speciñc duties in a noncompetitive or nonclassified position is unreasonable and as such an unnecessary invasion of the right of privacy of those individuals not involved in administrative or policy making processes.
Declaratory judgment is granted. Executive Order No. 10 is unconstitutional as applied to noncompetitive and nonclassified classes whose duties are not consistent with and do not involve administrative, confidential and/or managerial policy making decisions. Defendants are permanently enjoined from taking any action to enforce said order against the plaintiffs and all other employees similarly situated in the New York State professional, scientific and technical service unit.